IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Meaghan V.,[1]                                                 No. 6:22-cv-01530-HZ

                         Plaintiff,                            OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                         Defendant.


Brent Wells
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette St
Eugene, OR 97401

        Attorney for Plaintiff

Kevin C. Danielson
United States Attorney's Office
1000 SW Third Ave, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Lars J. Nelson
Social Security Administration
Office of the General Counsel
6401 Security Blvd
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Meaghan V. brings this action seeking judicial review of the Commissioner's

final decision to deny disability insurance benefits ("DIB") and supplemental security income

("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on July 19, 2018, and SSI on March 10, 2019, alleging an onset

date of January 1, 2009. Tr. 14.[2] Her application was denied initially and on reconsideration. Tr.

14. On December 18, 2020, Plaintiff appeared with counsel for a hearing before an

Administrative Law Judge ("ALJ"). Tr. 14. She amended her alleged onset date to May 13, 2019.

Tr. 14. Following the hearing, Plaintiff was sent for a consultative examination. Tr. 15. She

appeared at a supplemental hearing before the ALJ on May 26, 2021. Tr. 15. On July 15, 2021,

the ALJ found Plaintiff not disabled. Tr. 27. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on major depressive disorder, social anxiety disorder,

and ADHD. Tr. 418. At the time of her amended alleged onset date, she was 28 years old. Tr. 25.

She has at least a high school education and no past relevant work. Tr. 25.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after her amended alleged onset date. Tr. 17. Next, at steps two and three, the ALJ

determined that Plaintiff has the following severe impairments: "anxiety disorder, depressive

disorder, personality disorder, and attention deficit hyperactivity disorder (ADHD)." Tr. 17.

However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the

severity of a listed impairment. Tr. 17. At step four, the ALJ concluded that Plaintiff has the

residual functional capacity to perform a full range of work at all exertional levels with the

following limitations:

> the claimant can tolerate occasional, brief and superficial contact with coworkers
> and supervisors, but no direct interaction with the general public. The claimant
> cannot engage in work that involves strict time limits, such as assembly line work,
> or work requiring timed production quotas.

Tr. 19. The ALJ found that Plaintiff had no past relevant work. Tr. 25. But at step five, the ALJ

found that there are jobs that exist in significant numbers in the national economy that Plaintiff

can perform, such as "janitor," "cleaner, housekeeper," and "auto detailer." Tr. 26. Thus, the ALJ

concluded that Plaintiff is not disabled. Tr. 26.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to address the lay testimony of Plaintiff's spouse regarding Plaintiff's social limitations. Pl. Op. Br. 3-4, ECF 12. The Court concludes that the ALJ did not harmfully err with respect to Plaintiff's spouse's testimony.

## I.    Standard for Evaluation of Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20

C.F.R. §§ 404.1520c(d), 416.920c(d). But the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021).

The Ninth Circuit has long held that the ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded on other grounds* by 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

The Commissioner argues that the ALJ is no longer required to provide germane reasons in discounting lay witness testimony. Def. Br. 5-7, ECF 16. The Ninth Circuit has not decided whether the germane reasons standard still applies under the 2017 regulations, but suggested in a recent unpublished decision that it might not. *See Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."). Defendant argues that the germane reasons standard has been superseded because it was based on an old version of the regulations and a Social Security Ruling that was rescinded with the enactment of the 2017 regulations. Def. Br. 5-6. As the Ninth Circuit has not yet ruled on this issue, and the text of the 2017 regulations

does not eliminate the need to evaluate witness testimony, the Court declines to hold that the germane reasons standard no longer applies.

## II.    Application

In December 2018, Plaintiff's spouse provided a function report describing Plaintiff's limitations. Tr. 435-42. He stated that he and Plaintiff spent most of their time together and did "almost everything together." Tr. 435. He stated that Plaintiff's "psyche seems distractable and fragile." Tr. 435. He stated that if Plaintiff is "exposed to any situation where she is asked to interact (or sometimes even be around) she risks having an attack/breakdown/meltdown, and running away to hide." Tr. 435. He stated that during the day, Plaintiff "wakes, reads, eats, reads, does laundry if she has to, reads, works if she can, reads, cries, reads, sleeps, reads." Tr. 436. He stated that Plaintiff could use public transportation "if she must." Tr. 438. He stated that she can go out alone "but doesn't like to." Tr. 438. He stated that Plaintiff shopped in stores because it was "our only option with food stamps." Tr. 438. Plaintiff shopped three to four times per week for less than one hour each time. Tr. 438.

Plaintiff's spouse stated, "you wouldn't believe how well" Plaintiff could read, estimating her reading speed at over 1,000 words per minute. Tr. 439. He stated that Plaintiff also enjoyed hammock camping, playing with her dog, knitting, listening to podcasts, writing, and playing games. Tr. 439. He stated that Plaintiff spent time chatting online with friends. Tr. 439. He stated that Plaintiff "can do well for a limited time" interacting with others, but then gets "too overwhelmed. Then she gets withdrawn or leaves (if she is able)." Tr. 439. He stated that she sometimes has "a sudden and uncontrollable shift into 'fight or flight mode' without much warning, logic, or reason apparent." Tr. 440.

According to Plaintiff's spouse, Plaintiff can focus "for hours" when reading, but only 15-20 minutes when engaging with others. Tr. 440. He wrote that she could follow written instructions "fairly well" and spoken instructions "meh…average maybe?" Tr. 440. He wrote that Plaintiff avoids authority figures. Tr. 440. He wrote that she usually does not handle stress well, but handles changes in routine "fair" as long as she gets enough sleep. Tr. 441. He wrote that "when she gets overwhelmed, it's usually a very fast transition from 'fine' to 'run + hide + cry.'" Tr. 441. He wrote, "the suddenness of it irritates her" and "all of it upsets her on a regular basis." Tr. 441. And he wrote that Plaintiff "has a habit of doing her best to appear normal and well grounded . . . even when she's not okay. She does everything she can to hide her breakdowns and anxiety attacks." Tr. 442.

Plaintiff argues that the ALJ failed to give germane reasons to discredit her spouse's testimony about her limited ability to interact with others and her fast transition from being "fine" to not fine. Pl. Op. Br. 3-4. Plaintiff asserts that her husband's testimony on those symptoms goes beyond her own testimony. *Id.* at 3; Pl. Reply 4, ECF 19. Defendant points out that the ALJ did consider Plaintiff's spouse's testimony at step three. Def. Br. 4 (citing Tr. 18). Defendant is correct, but the ALJ considered Plaintiff's spouse's testimony in determining Plaintiff's limitations in her ability to concentrate and her ability to adapt or manage herself. Tr. 18. Plaintiff challenges the ALJ's handling of her spouse's testimony about Plaintiff's limitations in interacting with others, and the ALJ did not address Plaintiff's spouse's testimony in determining Plaintiff's limitations in that area. *See* Tr. 18. Nor did the ALJ address Plaintiff's spouse's testimony about Plaintiff's social limitations elsewhere in his opinion. The ALJ erred.

Defendant argues that the error was harmless because the ALJ gave valid reasons to discount Plaintiff's testimony, and her spouse's testimony is consistent with that testimony. Def. Br. 8-13. Plaintiff counters that Defendant is trying "to use impermissible *post hoc* rationalizations." Pl. Reply 5. "[A]n ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Molina*, 674 F.3d at 1122 (internal quotations omitted). If the ALJ provided valid reasons to discount Plaintiff's testimony, those reasons may also serve to discount her spouse's testimony.

The Court first considers whether Plaintiff's spouse's testimony went beyond Plaintiff's symptom testimony. In her function report, completed in December 2018, Plaintiff wrote, "crippling anxiety combines with my ADHD and bi-polar conditions to cause sudden onset moments where I feel vastly overwhelmed. This strikes without much warning and results in an uncontrollable fight or flight response." Tr. 427. She wrote that she would "seek immediate isolation" or "complete self-removal from the stimulating environment." Tr. 427. She wrote that she shopped for food in stores because she had to with food stamps, and got out "as quickly as possible." Tr. 430. She wrote that she was "often" with her spouse and that she would message and chat with friends online. Tr. 431. She wrote that she did not really have problems getting along with family, friends, neighbors, or others, but that she tried not to communicate with people besides her spouse in person. Tr. 432. She wrote that she avoided authority figures. Tr. 432. She wrote that she handled stress "very badly" and changes in routine "okay, I guess." Tr. 433. At her second hearing, Plaintiff testified that interacting with multiple people was "exhausting" and stated that "people are terrifying." Tr. 47. She stated that the expectation at a job that she would be social with coworkers was "exhausting and terrifying." Tr. 47-48. She said

that "maybe" she could do a job that only required her to work with one or two people or no people at all. Tr. 48.

Plaintiff described the same symptoms that she alleges are unique to her spouse's testimony. *See* Pl. Op. Br. 4. Plaintiff's spouse wrote that "when [Plaintiff] gets overwhelmed, it's usually a very fast transition from 'fine' to 'run + hide + cry.'" Tr. 441. He wrote that this transition happened "without much warning, logic, or reason apparent." Tr. 440. He wrote that "the suddenness of it irritates her" and "all of it upsets her on a regular basis." Tr. 441. Similarly, Plaintiff stated that "crippling anxiety combines with my ADHD and bi-polar conditions to cause sudden onset moments where I feel vastly overwhelmed. This strikes without much warning and results in an uncontrollable fight or flight response." Tr. 427. Plaintiff's spouse also stated that Plaintiff "can do well for a limited time" interacting with others, but then gets "too overwhelmed. Then she gets withdrawn or leaves (if she is able)." Tr. 439. Similarly, Plaintiff wrote that when she became overwhelmed, she would "seek immediate isolation" or "complete self-removal from the stimulating environment." Tr. 427.

Plaintiff also testified to symptoms more extreme than those described by her spouse. She wrote that she tried not to communicate with people besides her spouse in person. Tr. 432. She testified at her second hearing that "people are terrifying." Tr. 47. Plaintiff's spouse did not testify to those symptoms, but all of the symptoms to which he did testify match symptoms described in Plaintiff's testimony. Because Plaintiff's spouse did not testify to any symptoms not described by Plaintiff, harmless error analysis is appropriate here. The Court therefore considers whether the reasons the ALJ gave for discounting Plaintiff's symptom testimony were valid.

In discounting Plaintiff's testimony about her social limitations, the ALJ relied on Plaintiff's activities, her reason for stopping work, her job search after she allegedly became

disabled, her improvement with medication, and the objective medical record. Tr. 20-23. The

Court assesses each in turn.[3]

      A.     Activities of Daily Living

The ALJ found that Plaintiff's testimony was inconsistent with some of her activities of

daily living. Tr. 21. Contradiction with a claimant's activities of daily living is a clear and

convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035,

1039 (9th Cir. 2008). There are two grounds for using daily activities to support an adverse

credibility determination: (1) when activities meet the threshold for transferable work skills, and

(2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th

Cir. 2007). In order to impact a claimant's credibility, the activity has to be "inconsistent with

claimant's claimed limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ

cannot mischaracterize statements and documents in the record or take these out of context in

order to reach his or her conclusion on the claimant's credibility. *Id.* at 722-23. In addition, the

claimant's ability to perform limited basic daily activities is not a clear and convincing reason to

reject a claimant's testimony. *See id.* at 722 ("[D]isability claimants should not be penalized for

attempting to lead normal lives in the face of their limitations."); *Webb v. Barnhart*, 433 F.3d

683, 688 (9th Cir. 2005) ("The mere fact that a plaintiff has carried on certain daily activities,

such as grocery shopping, driving a car, or limited walking for exercise, does not in any way

detract from [her] credibility as to [her] overall disability. One does not need to be utterly

incapacitated in order to be disabled.") (internal quotation omitted).

---

[3] To the extent that Defendant relies on reasons to discount Plaintiff's testimony about
limitations other than her social limitations, those reasons are not relevant to the analysis here.

The ALJ identified several activities that he deemed inconsistent with the degree of social limitation Plaintiff alleged. Tr. 21. Plaintiff testified that she was a "twitch streamer video game player" and played video games two hours per day, four days a week, during which time she narrated for those watching. Tr. 52-53, 83-94, 1149. Plaintiff testified that there was no video contact and that she never wanted to get a web cam because "[i]t's too stressful." Tr. 53. She testified that doing this activity for two hours a day every day "was too much." Tr. 84. The ALJ stated that this activity, although "not 'in person,'. . . require[s] at least some interactive ability." Tr. 21. The testimony of Plaintiff and Plaintiff's spouse about Plaintiff's social limitations is consistent with this activity, which was online, involved no face-to-face interaction, and could be unilaterally terminated by Plaintiff at any time. The ALJ reasonably concluded that based on this activity, Plaintiff could handle some level of social interaction.

Next, the ALJ noted that "on February 20, 2021, the claimant was working on canning more and anticipating doing cannabis [sic] parties with her girlfriends in the future." Tr. 21. At an appointment with her psychiatrist in February 2021, Plaintiff reported that she felt better able to maintain success in her daily life activities and that her relationships were "going well for the most part." Tr. 1228. She also stated that she was working on canning and wanted to do canning parties with friends. Tr. 1228. At her second hearing, in May 2021, Plaintiff testified that canning parties were a family tradition for the women in her family and that she did not have any female friends. Tr. 51. She testified that she had not gone to a canning party for years. Tr. 52. She hoped she could go that year if she could save the money for the trip. Tr. 52. Plaintiff's aspiration to go to a family gathering is consistent with Plaintiff's less extreme testimony that she could suddenly become overwhelmed in social situations and need to leave, and her spouse's testimony to the same.

The ALJ also noted that Plaintiff reported the intention to go on occasional outings such as strawberry picking with her mother or getting a haircut. Tr. 21. Again, Plaintiff's ability to go on occasional social outings, which she could choose to leave at any time, is consistent with her less extreme testimony and her spouse's testimony. Likewise, while the ALJ relied on Plaintiff's ability to shop in stores and take public transportation if need be, Plaintiff wrote in her function report that she only used public transit "as a last resort" and that she shopped in stores because she had to in order to pay with food stamps and that she left "as quickly as possible." Tr. 430. Her spouse testified to the same. Tr. 438. That testimony is consistent with the social limitations Plaintiff and her spouse described.

The ALJ stated that the above activities undermined Plaintiff's testimony "that she finds being around anyone other than her husband exhausting and terrifying." Tr. 21. Plaintiff testified that "it was exhausting and terrifying" to interact with her coworkers in a social, unstructured way. Tr. 47-48. She stated, "people are terrifying." Tr. 47. She wrote in her function report, "I don't really communicate with anyone [besides my spouse] in person unless I must." Tr. 432. The ALJ only discredited Plaintiff's more extreme testimony about her symptoms; he did not discredit her less extreme testimony that was consistent with her spouse's testimony. The ALJ reasonably concluded that Plaintiff's stated intention to go to occasional social events in person with people besides her spouse undermined her more extreme testimony.[4] The ALJ did not err in his assessment of Plaintiff's social limitations based on her activities.

//

//

---

[4] As discussed below, notes from Plaintiff's sessions with her therapist and her psychiatrist show that Plaintiff's symptoms and functioning improved with medication and ongoing therapy in the years after Plaintiff submitted her function report.

B.    Reason for Leaving Work

The ALJ concluded that Plaintiff's "various statements do not support her alleged onset date of May 13, 2019, and the allegation that she had to stop working because the social interaction was exhausting and terrifying." Tr. 20. An ALJ may consider evidence that the claimant stopped working for a reason other than disability. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that ALJ did not err in concluding that claimant may not have been motivated to work because he had $97,000 in savings); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as amended* (Nov. 9, 2001) (holding that ALJ reasonably discounted claimant's testimony where claimant stated at the hearing and in a doctor's appointment that he left his job because he was laid off, not because he was injured).

The ALJ found Plaintiff's testimony at her second hearing about why she left her job inconsistent with the testimony at her first hearing. Tr. 20. At her first hearing, Plaintiff testified that she was let go from her job after she she requested a decrease in hours because the job "was really hard and stressful for me." Tr. 75. She stated that her performance had been "okay" until then, and she had not been put on probation or monitoring. Tr. 75-76. At her second hearing, Plaintiff testified that "it was exhausting and terrifying" to interact with her coworkers and she "couldn't deal with it." Tr. 47. The ALJ reasonably concluded that Plaintiff left her job for reasons other than the social interactions with coworkers. The ALJ noted that Plaintiff told a consultative medical examiner that she "love[d]" her job "because there is minimal interaction with 'other humans.'" Tr. 20 (citing Tr. 713). Plaintiff spoke with the consultative examiner on January 19, 2019, a few months before her amended alleged onset date. Tr. 713. The ALJ also noted that Plaintiff told her therapist that she "lost her job after requesting a reasonable accommodation." Tr. 20 (citing Tr. 946). In March 2019, Plaintiff told her therapist that a

coworker was performing below standards, "making her job more difficult." Tr. 804. She told

her therapist that she felt she was blamed for a lack of productivity and that she overheard

coworkers saying negative things about her. Tr. 810. In April 2019, she told her therapist that she

needed to request a reasonable accommodation at work and that she expected to lose her job. Tr.

816. The ALJ did not err in concluding that Plaintiff left her job for reasons other than her social

limitations.

        C.        Seeking Work After Alleged Onset Date

        The ALJ found that Plaintiff's job search in 2020 undermined her testimony about her

social limitations. Tr. 21. In September 2020, Plaintiff told her psychiatrist that she was

unemployed and seeking work. Tr. 1162. At her first hearing, Plaintiff testified that vocational

rehabilitation services had helped her look for work. Tr. 76. She testified that in October 2020

she was hired for a job but hurt her back on the second day and was not allowed to come back.

Tr. 76. She stated, "I took the job knowing that I wasn't going to be able to manage it, but I

really needed the money because the dog has to go to the vet." Tr. 77. At her second hearing,

Plaintiff testified that she was looking for work but could not find any jobs that would not

require her to "deal or interact with many, many people." Tr. 47. The ALJ concluded that

Plaintiff's "ability to engage with Vocational Rehab, obtain employment, and show up for the

first two days of work is inconsistent with the severity and persistence of terror when forced to

interact with others that the claimant described in her testimony." Tr. 21.

        The Ninth Circuit has held that where a claimant briefly attempts to work after the

alleged onset date due to economic difficulties, and fails because of their impairments, the work

attempt is not a clear and convincing reason to discount the claimant's symptom testimony.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007). The Court concludes that

Plaintiff's attempt to work does not in itself undermine her testimony about her social limitations. Plaintiff testified that she attempted to work for economic reasons, and knew that she could not handle the job. Tr. 77. Her two days on the job are too brief to provide any information about her ability to work long-term. The ALJ did not err, however, in concluding that Plaintiff's ability to work with Vocational Rehab and obtain employment showed that she could handle "[o]ccasional contacts" with other people. Tr. 21. Such a conclusion is consistent with Plaintiff's less extreme testimony and Plaintiff's spouse's similar testimony that Plaintiff could handle interactions with others for a period of time.

D.    Improvement with Treatment

The ALJ found that Plaintiff's psychiatric symptoms improved with therapy and medication. Tr. 22. Relevant factors for the ALJ to consider when evaluating symptom testimony include "[t]he type, dosage, effectiveness, and side effects of any medication" the plaintiff takes to alleviate symptoms and "[t]reatment, other than medication" used to relieve symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). *See also Perry H. v. Saul*, No. 1:19-CV-00050-AA, 2020 WL 2764614, at *5 (D. Or. May 27, 2020).

The ALJ stated, "With therapy, the claimant was able to reduce stress in her relationship with her husband, and begin to engage in regular hobbies that involve social interaction." Tr. 22. He acknowledged that Plaintiff had ongoing symptoms from her mental health conditions, but noted that Plaintiff's therapist "felt the claimant's progress was guarded/good." Tr. 22. He also noted that Plaintiff declined medication in May 2020, but reported that her symptoms of anxiety and depression improved once she began taking medication. Tr. 22.

In March 2018, Plaintiff "described a lot of anxiety" in a meeting with a therapist. Tr. 682. She reported, "I can't work with people, people are terrifying." Tr. 682. In January 2019, Plaintiff told the consultative medical examiner that anxiety was her most debilitating symptom and it was "worse when she is around large groups of people." Tr. 713. The consultative examiner opined that Plaintiff's anxiety and depression were "a major source of the claimant's inability to work around people." Tr. 716. Also in January 2019, Plaintiff reported to her therapist both concerns about her ability to "be a human" and an increased ability to manage stress. Tr. 789. Plaintiff told her therapist in June 2019, "I have limited capacity to deal with other people[.]" Tr. 727. However, Plaintiff also told her therapist that she did not feel the need to be on medication. Tr. 732. Plaintiff's therapist wrote that if Plaintiff continued with therapy, "her prognosis is guarded/good." Tr. 732.

In January 2020, Plaintiff identified personal growth and improved mental and emotional status. Tr. 986. She also expressed that she was "paranoid/anxious" about meeting a new primary care provider, stating that she was worried that the new provider would not take her physical pain seriously because she [Plaintiff] is a woman. Tr. 987. In April 2020, Plaintiff identified "increased comfort with herself and her increased confidence in receiving positive feedback from peers and her partner." Tr. 956. She also identified "further opportunities to engage socially to 'test the waters' of her confidence." Tr. 956. In May 2020, Plaintiff reported less stress in her relationship with her spouse, and that she had begun to engage in social activities that involved social interaction, calling this "good." Tr. 941. Her therapist identified "slow steady progress increasing her engagement in reality, managing symptoms, and increasing functionality as well as maintaining relationship safety." Tr. 941-42. Plaintiff's therapist stated that her prognoses was "guarded/good" if Plaintiff continued with therapy. Tr. 946. In May and June 2020, Plaintiff

reported increased confidence and decreased depressive symptoms. Tr. 926, 932. In July 2020, Plaintiff reported that she had been able to use her boundaries in interacting with friends. Tr. 923.

In August 2020, Plaintiff was referred to a psychiatrist after she reported "fleeting suicidal ideation." Tr. 1157. In September 2020, the psychiatrist prescribed Wellbutrin. Tr. 1164. In October 2020, Plaintiff reported that the Wellbutrin was "helpful for decreasing her depressive and lack of focus symptoms[.]" Tr. 1149. She told her psychiatrist that her relationships were going well for the most part, though she also reported that her symptoms were starting to negatively impact her relationships. Tr. 1150, 1153. In November 2020, Plaintiff told her therapist that she had decreased anxiety and only mild depressive symptoms. Tr. 1169, 1175. In December 2020, Plaintiff reported to her psychiatrist that the Wellbutrin was still working. Tr. 1242. Plaintiff described her symptoms as "mild and well managed" and said they were not influencing her ability to maintain success in her daily life activities. Tr. 1242. In January 2021, Plaintiff reported that the Wellbutrin continued to work. Tr. 1235. She was organizing an online Pokémon game with her friends, which "helps her anxiety." Tr. 1235. She did feel that her symptoms were impacting her daily life activities. Tr. 1235. Her psychiatrist started her on a trial of Abilify. Tr. 1239.

In February 2021, Plaintiff reported that the Abilify had helped decrease her depression and anxiety symptoms. Tr. 1228. She described her symptoms as "much more mild and manageable since last session." Tr. 1228. She stated that she wanted to do canning parties in the future. Tr. 1228. Also in February 2021, Plaintiff reported "continued improved functioning" to her therapist despite ongoing anxiety. Tr. 1266. She also reported "increased confidence in her ability to manage her symptoms" of anxiety. Tr. 1268. In March 2021, Plaintiff reported to her

psychiatrist that the Abilify continued to be effective at reducing her symptoms. Tr. 1220. She told her therapist that her depression was "almost gone" and her anxiety was mild. Tr. 1264. In April 2021, Plaintiff reported to her psychiatrist that Abilify continued to be effective at reducing her symptoms. Tr. 1212. She reported that her symptoms were not influencing her ability to maintain success in daily life activities. Tr. 1212. She reported that her relationships with her husband and friends were positive. Tr. 1212. She reported significant stress due to a downstairs neighbor and her upcoming disability hearing. Tr. 1212. Plaintiff's anxiety was described as "moderate" at a session with her therapist in early April 2021, Tr. 1258, but "mild" at later sessions that month, Tr. 1250, 1254, 1256. In June 2021, Plaintiff reported that her medication regimen of Wellbutrin and Abilify helped to decrease her depression and anxiety. Tr. 1299. She rated her anxiety higher due to "coming life stressors." Tr. 1299. She also reported inability to keep and maintain employment, frequent inability to get out of bed or bathe, "frequent disabling panic attacks, severe anxiety in social/public situations, isolating away from family and friends." Tr. 1299. Plaintiff also reported plans to go strawberry picking with her mother. Tr. 1300.

      The ALJ did not err in his assessment of Plaintiff's therapy and psychiatrist notes. Both show that Plaintiff continued to report symptoms that impacted her functioning, but that regular talk therapy and a medication regimen helped improve her symptoms of anxiety and depression. The ALJ also reasonably noted that Plaintiff declined medication until mid-2020, and that her symptoms improved significantly once she began taking medication. Tr. 22. Plaintiff reported gradual progress in her ability to interact with others and made plans to engage in occasional social activities. To the extent that Plaintiff's June 2021 treatment note mentioned anxiety symptoms such as social isolation and severe anxiety in social situations, the ALJ reasonably noted that at the same session, Plaintiff also reported good relationships with family and friends

and looked forward to going strawberry picking with her mother and getting a haircut at a salon. Tr. 22. The ALJ also reasonably noted that the treatment records did not reflect the degree of limitation from stress that Plaintiff reported. Tr. 22. The ALJ reasonably concluded that with therapy and medication, Plaintiff's symptoms improved, including her symptoms related to her social limitations.

E.    Objective Medical Evidence

The ALJ found that the objective medical record undermined the degree of social limitation Plaintiff alleged. Tr. 23. An ALJ may discount a claimant's testimony based on a lack of support from objective medical evidence, but this may not be the sole reason. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (holding that "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant's testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted); *Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) (stating that "[b]ecause the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony."). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

The ALJ stated, "Consistent with limitation in social functioning, mental status exams found paranoia or suspicion, and circumstantial thought process. However, the claimant

presented with cooperative behavior and improving eye contact." Tr. 23 (citing Tr. 1151, 1162, 1214, 1222, 1230, 1236, 1243, 1301). The records on which the ALJ relied were checkboxes in Plaintiff's appointments with her psychiatrist. Plaintiff's ability to cooperate with her psychiatrist at an occasional one-on-one meeting is consistent with Plaintiff's less extreme testimony about her symptoms and her spouse's similar testimony that she could interact with others for a limited period of time. The objective medical record supports the ALJ's conclusion that Plaintiff could handle occasional in-person contact with people besides her husband.

The ALJ credited Plaintiff's testimony about her social limitations to a large degree. The ALJ stated that Plaintiff "clearly needs limited contact, but the medical evidence of record does not reflect that she needs absolute isolation in order to work. Occasional contacts without time pressures would address her level of functioning." Tr. 21. That conclusion was consistent with Plaintiff's activities, work history, course of treatment, and objective medical records. That conclusion was also consistent with much of Plaintiff's testimony, as well as the portion of Plaintiff's spouse's testimony at issue here. The ALJ only rejected Plaintiff's more extreme testimony about her social limitations. Substantial evidence supports the ALJ's assessment of Plaintiff's testimony about her social limitations. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (substantial evidence supported ALJ's discounting of plaintiff's testimony where ALJ properly relied on activities but erred in relying on receipt of unemployment benefits and conservative treatment). Because Plaintiff's spouse did not testify to any symptoms not described by Plaintiff, the ALJ's error in failing to address his testimony was harmless.

Finally, although Plaintiff states that her spouse's testimony about her social limitations "goes to an inability to sustain a job 8 hours a day, 5 days a week," Pl. Reply 4, she does not

identify any limitations that the ALJ failed to include in the RFC based on that testimony. She

does not challenge the RFC at all. Plaintiff has not shown that the ALJ harmfully erred in his

handling of her spouse's testimony about her social limitations.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:    November 14, 2023    .


MARCO A. HERNÁNDEZ
United States District Judge